**UNITED STATES of America, Appellee,**

v.

**Calvin COOHEY, Appellant.**

**No. 93–1217.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 19, 1993.

Decided Dec. 3, 1993.

Thomas Gillespie, Cedar Rapids, IA, argued, for appellant.

Richard L. Murphy, Asst. U.S. Atty., Cedar Rapids, IA, argued (Daniel C. Tvedt, Asst. U.S. Atty., on the brief), for appellee.

Before BOWMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BOWMAN, Circuit Judge.

Calvin John Coohey appeals his convictions and sentences on drug trafficking charges involving lysergic acid diethylamide (LSD). We affirm his convictions and sentences, but remand so that the District Court may consider whether Coohey's sentences should be reduced pursuant to a recent amendment to the Sentencing Guidelines concerning the method for determining the weight to be assigned to LSD and its carrier medium for sentencing purposes.

## I.

Coohey was convicted of conspiracy to distribute, and also distribution of, LSD within 1000 feet of a school. At his sentencing hearing in December 1992, the District Court[1] found that, pursuant to United States Sentencing Commission, *Guidelines Manual,* § 2D1.1 (Nov. 1992), Coohey's offense level for each violation, which was based on 5950 doses of LSD weighing 38.675 grams, was 34. The District Court denied Coohey's request for a downward adjustment under U.S.S.G. § 3E1.1 for acceptance of responsibility based on his admissions at the sentencing hearing, but it included a one-level enhancement for distribution within a protected school zone, *id.* § 2D1.2(a)(2), and a three-level enhancement for his role in the offenses, *id.* § 3B1.1(b), for a final adjusted offense level of 38. After finding that Coohey had a Category III criminal history, the court determined that the applicable sentencing range was 292 to 365 months for each violation. The court determined that Coohey's sentences should be near the lower end of this range because the amount of LSD was near the lower end of level 34's 30–to–100–gram range and Coohey's criminal history comprised relatively minor and non-violent offenses. The court sentenced Coohey to concurrent sentences of 298 months of imprisonment for each violation. The court also fined Coohey $5000, and ordered him to serve an eight-year term of supervised release and pay a $100 special assessment. Coohey appeals.

## II.

■ Coohey challenges the District Court's admission of certain telephone records. At trial, Lynn Capps testified that she had purchased LSD from Coohey on several occasions. Because she telephoned Coohey to arrange her purchases, the United States offered into evidence telephone records that listed long-distance telephone calls from Capps's Dubuque, Iowa residence to Coohey's home and cellular telephone numbers in Cedar Rapids, Iowa and to the Cedar Rapids home of a third party who helped Coohey deliver the LSD to Capps.

The United States called Marquita Hoskins to testify at Coohey's trial to lay the foundation for the admission of the telephone records. Hoskins testified that she was U.S. West's keeper of records for the entire 319 area code; U.S. West makes and retains records of long-distance telephone calls in the normal course of business; the records initially are stored in Dubuque and later are transferred without alteration to Minneapolis and Denver for storage; the records at issue had been subpoenaed from the Denver records center, which forwarded the subpoena to the U.S. West security office; a security office employee sent copies of the records to the United States and so informed Hoskins; Hoskins received copies of the records from the United States before trial; the United States's exhibit was a copy of telephone records that listed calls from Capps's residence; and the records did not appear to have been altered or tampered with in any way.

Coohey claims that Hoskins was not qualified to authenticate the records. He reasons that Hoskins was not the keeper of the records because the records apparently were kept in Colorado, not Iowa; she did not have a hand in their preparation; and, because she did not see before trial the specific records that were produced by the U.S. West security office pursuant to the Government's subpoena, the United States could have tampered with or entirely fabricated the records and Hoskins had no knowledge that would have enabled her to conclude otherwise.

■ The proponent of evidence must make a showing of authentication "sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). To meet this standard, the proponent need only demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be. *United States v. Long,* 857 F.2d 436, 442 (8th Cir.1988), *cert. denied,* —— U.S. ——, 112 S.Ct. 98, 116 L.Ed.2d 69 (1991). We review for an abuse

---

1. The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa.

of discretion the District Court's determination that the records were admissible. *United States v. Franks,* 939 F.2d 600, 602 (8th Cir.1991).

■ We reject Coohey's challenges to Hoskins's authentication of the telephone records. That Hoskins was not the keeper of the records and did not prepare them, even if true, would not impede her ability to testify that the records were authentic.[2] Nor does the U.S. West security office's bypassing of Hoskins by sending the records directly to the United States. Evidence is admissible if the trial judge is satisfied, after consideration of such factors as the nature of the evidence, the circumstances surrounding its preservation and custody, and the likelihood that it has been tampered with, that the evidence has not in all reasonable probability been changed in any significant respect. *United States v. Weeks,* 645 F.2d 658, 660 (8th Cir. 1981). Hoskins's testimony supports a finding that the telephone records were what the United States claimed, *see United States v. Atchley,* 699 F.2d 1055, 1059 (11th Cir.1983), and we will not second guess the District Court's decision to give credence to this testimony. Insofar as Coohey's theorizing of possible misconduct on the part of the United States is concerned, it is notable that Coohey does not allege that the records were not authentic or that they had been created or in any way altered by the United States; in the absence of such a showing, the District Court was entitled to presume that the public officials in possession of the records acted with integrity and properly discharged their official duties. *See United States v. Brown,* 482 F.2d 1226, 1228 (8th Cir.1973). The District Court did not abuse its discretion when it admitted the telephone records.

### III.

#### A.

Coohey complains of the methods the District Court used to determine the weight of his LSD for sentencing purposes. The District Court included the weight of both the LSD and its carrier medium, in this case blotter paper, and determined that Coohey's 5950 doses of LSD, based on the 6.5 milligrams per dose of the Government's controlled purchase, weighed 38.675 grams. Coohey suggests that the court should have excluded the weight of the carrier medium for sentencing purposes and instead should have used an approximate weight of 0.05 milligrams of pure LSD per dose for a total weight of 0.2975 grams.

■ Coohey contends that the language "mixture or substance containing a detectable amount of" LSD, as found in the Sentencing Guidelines, U.S.S.G. § 2D1.1(c) n.*, and in 21 U.S.C. § 841 (1988), from which the Sentencing Commission adopted this language, U.S.S.G. § 2D1.1 comment. (n.1), is ambiguous and should not be construed to require the inclusion of the weight of the carrier medium when determining the weight of the LSD. Furthermore, he contends, including the weight of the carrier medium constitutes a denial of equal protection as guaranteed by the Fifth Amendment's Due Process Clause because the length of the sentence can vary markedly with the type of carrier medium being used and its weight. As Coohey acknowledges in his brief, these arguments already have been rejected by this Circuit, *see United States v. Bishop,* 894 F.2d 981, 985–86 (8th Cir.), *cert. denied,* 498 U.S. 836, 111 S.Ct. 106, 112 L.Ed.2d 77 (1990), and by the Supreme Court, *see Chapman v. United States,* 500 U.S. 453, ——, ——, 111 S.Ct. 1919, 1925, 1927, 114 L.Ed.2d 524 (1991). Because Coohey fails to explain to us why we should or how we can reject both Circuit and Supreme Court precedent, we instead reject his arguments.

■ Coohey also argues that the Sentencing Commission, by establishing a system of punishments based on the weight of both the LSD and its carrier medium, has established

---

**2.** We also must reject these arguments to the extent that Coohey has applied them to the foundation for the records' admission under Federal Rule of Evidence 803(6), the business records exception to the hearsay rule. *See United States v. Franks,* 939 F.2d 600, 602 (8th Cir.1991) (holding that the witness need not personally have played a role in the preparation of the records); *United States v. Kail,* 804 F.2d 441, 448 (8th Cir.1986) (explaining that the witness can be either the custodian or someone else who is otherwise qualified).

a system that metes out punishments arbitrarily and thus violates its statutory grant of authority from Congress. This argument's premise is flawed, however, for it was Congress, and not the Sentencing Commission, that decided that the punishment for those dealing in LSD would be based on the weight of both the drug and its carrier medium. *See id.* at ——, 111 S.Ct. at 1925. Accordingly, this argument must fail.

### B.

■ After Coohey was sentenced by the District Court, the Sentencing Commission amended the Sentencing Guidelines provision that specifies the method for determining the weight of LSD for sentencing purposes. Effective November 1, 1993, U.S.S.G. § 2D1.1(c) (Nov. 1993) now provides that the weight of LSD for sentencing purposes is to be determined by treating each dose of LSD as weighing 0.4 milligrams. *See id.* App. C, Amendment 488. Applying this provision, the weight of LSD for which Coohey is responsible for sentencing purposes would be 2.38 grams, rather than 34.675 grams. This lower weight would make him eligible for a shorter prison term.

■ In his reply brief, Coohey challenges this amendment as "only a half hearted effort [that] does not meet the Congressional mandate of fairness, equality and rationality." Appellant's Reply Brief at 7. Having already held that the previous system, which based sentences directly on the actual weight of the LSD and its carrier medium, was valid, we conclude that this new method, which will make LSD sentences more uniform by eliminating the disparities caused by varying weights of different carrier media, also is valid.

Congress gave the Sentencing Commission the authority to decide whether and to what extent its amendments that reduce sentences are to be given retroactive effect. *Braxton v. United States,* 500 U.S. 344, ——, 111 S.Ct. 1854, 1858, 114 L.Ed.2d 385 (1991). The Sentencing Guidelines provide that

"[w]here a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment [that is specifically referenced], a reduction in the defendant's term of imprisonment may be considered." U.S.S.G. § 1B1.10(a), p.s. Amendment 488 is a specifically referenced amendment to which section 1B1.10(a) applies. *Id.* § 1B1.10(d), p.s. Section 1B1.10 does not mandate that Amendment 488 be applied retroactively, but instead gives the sentencing court the discretion so to apply it. Accordingly, rather than vacate Coohey's sentences, we remand the case to the District Court in order to allow that court to consider whether, in the exercise of its discretion, Amendment 488 should be applied retroactively to reduce Coohey's sentences. *See United States v. Wales,* 977 F.2d 1323, 1327–28 (9th Cir.1992); *United States v. Connell,* 960 F.2d 191, 197 (1st Cir.1992).[3]

### IV.

Coohey's convictions and sentences are affirmed. We remand to the District Court for consideration of whether Coohey's sentences should be reduced in light of the recent intervening amendment to the guidelines.

---

**3.** We note that, even absent our remand, 18 U.S.C. § 3582(c)(2) (1988) apparently would permit the District Court to consider giving Coohey the benefit of Amendment 488 on the court's own motion or upon motion of the defendant or the Director of the Bureau of Prisons for modification of the defendant's term of imprisonment.